**Hearing Date: March 29, 2016 at 10:00 a.m.**
**Response Deadline: March 22, 2016**

**BILZIN SUMBERG BAENA**
 **PRICE & AXELROD LLP**
1450 Brickell Avenue, Ste. 2300
Miami, Florida 33131
305-350-7232
Philip R. Stein *(Admitted Pro Hac Vice)*
Mindy A. Mora
Anthony V. Narula *(Admitted Pro Hac Vice)*

*Counsel for Standard Pacific Mortgage, Inc.*
*f/k/a Family Lending Services, Inc.*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------x
                                                             :
In re:                                                       :    Chapter 11
                                                             :
LEHMAN BROTHERS HOLDINGS INC., *et al.*,                     :    Case No. 08-13555 (SCC)
                                                             :
                        Debtors.                             :
                                                             :
-------------------------------------------------------------x

**LEHMAN BROTHERS HOLDINGS INC.,**              Adversary Proceeding

        Plaintiff,                              No.  16-01002 (SCC)

v.

**STANDARD PACIFIC MORTGAGE, INC.**
**f/k/a FAMILY LENDING SERVICES, INC.,**

        Defendant.

_____/

## MOTION TO DISMISS ADVERSARY COMPLAINT

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................................ ii

I.      OVERVIEW ....................................................................................................... 1

    A.   The Loan Purchase Agreements and Seller's Guide ...................................... 3

    B.   Standard Pacific Sells 24 Loans to LBB, Which Then Sells Them to LBHI on a Non-Recourse Basis, With No Representations and Warranties ............................. 5

II.     LEGAL STANDARD.......................................................................................... 6

III.    ARGUMENT....................................................................................................... 7

    A.   LBHI's Claim is not Cognizable as "Contractual Indemnification" ............................. 7

    B.   New York's Borrowing Statute Requires That Delaware's Three-Year Limitations Period Be Applied............................................................................. 10

        1.   LBB's Residence Controls Application of the Borrowing Statute ...................... 11

        2.   LBB was a Delaware Resident ................................................. 12

    C.   Breach of Contract Claims are Time-Barred Under Delaware's Statute of Limitations ........................................................................................ 14

        1.   LBHI's Claims Accrued in 2006 and 2007 Upon Standard Pacific's Sale of the Loans.......................................................................... 14

        2.   The Indemnity Clause Provides a Contractual Remedy, not a Perpetual Cause of Action.......................................................................... 18

IV.     CONCLUSION.................................................................................................. 25

V.      ORAL ARGUMENT IS REQUESTED ................................................................ 25

CERTIFICATE OF SERVICE ........................................................................................ 26

BILZIN SUMBERG BAENA PRICE & AXELROD LLP

1450 Brickell Avenue, Suite 2300, Miami, FL  33131-3456

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*ABB Indus. Sys., Inc. v. Prime Technology, Inc.*,
120 F.3d 351 (2d Cir. 1997)...................................................................................15

*ACE Sec. Corp. v. DB Structured Prods., Inc.*,
25 N.Y.3d 581 (N.Y. 2015) ..................................................................................16

*Aircraft Serv. Int'l, Inc. v. TBI Overseas Holdings, Inc.*,
No. CVN13C-06-265WCCCCLD, 2014 WL 4101660 (Del. Super. Aug. 5,
2014) ..............................................................................................................21, 22

*Akhenaten v. Najee, L.L.C.*,
No. 1:07-CV-00970-RJH, 2009 WL 794485 (S.D.N.Y. Mar. 27, 2009) ...............................23

*Albert v. Alex. Brown Mgmt. Servs., Inc.*,
2005 WL 1594085 (Del. Ch. June 29, 2005).........................................................14

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)...........................................7

*Aurora Bank, FSB v. DHI Mortg. Co., Ltd*,
Case No. 1:13-cv-00561-RPM (D. Colo. 2013) ...................................................23

*Aurora Bank, FSB v. PrimeLending, a PlainsCapital Co.*,
Case No. 1:13-cv-00354-MSK (D. Colo. 2013)....................................................23

*Aurora Bank, FSB v. Shea Mortg. Inc.*,
Case No. 1:12-cv-02752-RPM (D. Colo. 2012) ...................................................24

*Aurora Bank, FSB v. Universal Am. Mortg. Co., LLC*,
Case No. 1:12-cv-02067 (D. Colo. 2012) .............................................................24

*Aurora Commercial Corp. v. Standard Pacific Mortg., Inc.*,
No. 12-cv-03138-WJM-KLM, 2014 WL 1056383 (D. Colo. Mar. 19, 2014)..............1, 16, 24

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).........................................7

*Bunker v. Bunker*,
437 N.Y.S.2d 326, 80 A.D.2d 817 (N.Y. App. Div. 1981) ....................................9

*Central Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings*,
2012 WL 3201139 (Del. Ch. Aug. 7, 2012) .........................................................15

*CertainTeed Corp. v. Celotex Corp.*,
   2005 WL 217032 (Del. Ch. Jan. 24, 2005) ...........................................................15

*City of New York v. Lead Indus. Ass'n, Inc.*,
   644 N.Y.S.2d 919, 222 A.D.2d 119 (N.Y. App. Div. 1996) (per curiam)................................8

*Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured
Prods., Inc.*,
   958 F. Supp. 2d 488, 2013 WL 3863861 (S.D.N.Y. 2013) .......................................................22

*Deutsche Bank National Trust Co. v. Quicken Loans Inc.*,
   2015 WL 7146515 (2d Cir. Nov. 16, 2015)......................................................19, 20

*Dutton v. Mitek Realty Corp.*,
   463 N.Y.S.2d 471, 463 A.D.2d 769 (App. Div. 1983) ...........................................8

*E.E.O.C. v. Staten Island Sav. Bank*,
   207 F.3d 144 (2d Cir. 2000).................................................................7

*Ely-Cruikshank Co. v. Bank of Montreal*,
   615 N.E.2d 985 (N.Y. 1993)..............................................................15

*Global Fin. Corp. v. Triarc Corp.*,
   93 N.Y.2d 525, 715 N.E.2d 482 (N.Y. 1999) ........................................11

*Gordon & Co. v. Ross*,
   63 F. Supp. 2d 405 (S.D.N.Y. 1999)..................................................13

*Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*,
   18 N.Y.3d 765 (2012) ....................................................................15

*In re Coca-Cola Enters., Inc.*,
   2007 WL 3122370 (Del. Ch. Oct. 17, 2007) ......................................14

*Ins. Co. of North America v. ABB Power Generation, Inc.*,
   91 N.Y.2d 180, 668 N.Y.S.2d 143, 690 N.E.2d 1249 (1997)...................................13

*Int'l Broth. Teamsters v. Coca-Cola Co.*,
   954 A.2d 910 (Del. 2008) ...............................................................14

*L & R Saunders Assoc. d/b/a Radiology Prof'ls v. Bank of Am.*,
   2012 WL 4479232 (Del. Super. Sept. 12, 2012) ................................14

*L.E. Talcott & Sons, Inc. v. Aurora Corp.*,
   176 F. Supp. 783 (D. Del. 1959)......................................................20

*L.E. Talcott & Sons, Inc. v. Aurora Corp.*,
   280 F.2d 128 (3d Cir. 1960).............................................................20

*LaPoint v. AmerisourceBergen Corporation*,
  970 A.2d 185 (Del. 2009) ...............................................................................20, 21

*Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*,
  793 F. Supp. 2d 1189 (W.D. Wash. 2011) ..............................................................17

*Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co., LLC*,
  No. 13-cv-00092-WJM-BNB, 2014 WL 4269118 (D. Colo. Aug. 28, 2014) ........................16

*Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co., LLC*,
  No. 13-cv-00090-PAB-MJW, 2014 WL 3258409 (D. Colo. Jul. 8, 2014).............................10

*Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co., LLC*,
  2016 WL 325126 (10th Cir. Jan. 27, 2016) ..............................................1, 7, 9, 10

*Lehman Brothers Bank, FSB v. State Bank Comm.*,
  937 A.2d 95 (Del. 2007) ...............................................................................13

*Lehman XS Trust, Series 2006-4N v. Greenpoint Mortg. Funding, Inc.*,
  991 F. Supp. 2d 472 (S.D.N.Y. 2014).................................................................19

*McCabe v. Queensboro Farm Prods., Inc.*,
  239 N.E.2d 340 (N.Y. 1968).............................................................................8

*Nomura Asset Acceptance Corp. v. Nomura Credit & Capital, Inc.*,
  39 Misc. 3d 1226(A), 2013 WL 2072817 (Sup. Ct. N.Y. Cty. May 10, 2013) .......................16

*Orix Real Estate v. Superior Bank, FSB*,
  127 F. Supp. 2d 981 (N.D. Ill. 2000) .................................................................22

*Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*,
  782 F.2d 346 (2d Cir. 1986)........................................................................8, 9, 10

*Portfolio Recovery Assocs., LLC v. King*,
  14 N.Y.3d 410, 927 N.E.2d 1059 (N.Y. 2010) .......................................................11

*Rosenblatt v. Christie*,
  195 Fed. App'x 11 (2d Cir. 2006).......................................................................16

*SmithKline Beecham Pharms. Co. v. Merck & Co.*,
  766 A.2d 442 (Del. 2000) ...............................................................................15

*Structured Mortg. Trust 1997-2 v. Daiwa Fin. Corp.*,
  2003 WL 548868 (S.D.N.Y. Feb. 25, 2003)..........................................................16, 17, 19

*Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*,
  860 A.2d 312 (Del. 2004) ...............................................................................14

iv

*Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A.*,
    2014 WL 1259630 (S.D.N.Y. 2014) .................................................................................17

*Windsearch, Inc. v. Delafrange*,
    90 A.D.3d 1223, 934 N.Y.S.2d 576 (N.Y. App. Div. 2011) ....................................................11

STATUTES

12 U.S.C. § 1424(b) ...........................................................................................................12

12 U.S.C. § 1464(d)(1)(A) ..................................................................................................12

10 Del. Code § 8106 .......................................................................................................13, 14

OTHER AUTHORITIES

12 C.F.R. § 545.91(a) .........................................................................................................12

12 C.F.R. § 561.39 .............................................................................................................12

12 C.F.R. §1263.18(b) ........................................................................................................12

Federal Rule of Bankruptcy Procedure 7012(b) ...................................................................1, 6, 7

Federal Rule of Civil Procedure 12(b)(6) ............................................................................1, 6

N.Y. C.P.L.R. 202 ..........................................................................................................10, 11

N.Y. C.P.L.R. § 206(a) ......................................................................................................17

## <u>MOTION AND MEMORANDUM OF LAW</u>

Defendant, Standard Pacific Mortgage, Inc. ("Standard Pacific"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, made applicable hereto by Federal Rule of Bankruptcy Procedure 7012(b), moves to dismiss (the "Motion") the Adversary Complaint ("Complaint" or "Compl.") dated January 6, 2016, filed by Lehman Brothers Holdings Inc. ("LBHI").

## I.    <u>OVERVIEW</u>

Standard Pacific has already defeated the entity to which it sold these loans, Lehman Brothers Bank ("LBB"), now known as Aurora Commercial Corp. ("Aurora") on claims of this same type, made under this same contract.   It did so in the District of Colorado (*Aurora Commercial Corp. v. Standard Pacific Mortg., Inc.*, No. 12-cv-03138-WJM-KLM, 2014 WL 1056383 (D. Colo. Mar. 19, 2014), LBB and LBHI's preferred forum at that time for claims seeking repurchase and indemnification relief.   Standard Pacific won on the same grounds that it asserts in this motion: (1) that the plaintiff's claims are in fact ones for breach of contract, for which what is contractually-denominated as "indemnification," meaning reimbursement for losses occasioned by the underlying alleged breach, is a potentially available contractual remedy; and (2) those claims are time-barred.   Standard Pacific then had that victory, which was consolidated on appeal with five substantially similar victories won by another loan originator/seller over LBHI, affirmed by the United States Court of Appeals for the Tenth Circuit last month in a 37-page order and opinion.   *Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co., LLC*, 2016 WL 325126 (10th Cir. Jan. 27, 2016) (attached as Ex. A.)

Though Standard Pacific is mindful of this Court's prior ruling in another case that these types of claims are "indemnification" claims not barred by the statute of limitations, it urges the Court to consider the issue anew in light of sound case authority to the contrary and additional

arguments not raised by the defendant in that other matter.  The issue here is not whether there is such a thing as a claim for indemnification, nor is it when such a claim would accrue.  Rather, it is whether what Section 711 of the relevant Seller's Guide creates is an independent cause of action or one of multiple available remedies -- as indeed it is referred to repeatedly in the Seller's Guide -- for an underlying breach of contract.  Moreover, even if Section 711 somehow gave rise to an entirely distinct cause of action with its own accrual period for statute of limitations purposes, such a claim would still be time-barred by operation of that provision.  Section 711 is certainly worded broadly enough that (if indeed Standard Pacific delivered a contractually-deficient loan to LBHI's affiliate LBB) the purchaser would have had an "indemnification" right as soon as it received a loan less valuable than that for which it bargained -- that is, on the date of sale.  Indeed, LBB (now Aurora) regularly seeks "indemnification" notwithstanding the fact that it is the plaintiff in cases of this type only when it never sold the loan to LBHI or a third party.

If "indemnification" under this contract can be a cause of action at all, it can be a first-party claim made prior to, or in the absence of, a payment by a purchaser to a subsequent purchaser, and these claims would therefore still be time-barred.  But the Tenth Circuit was correct that what has been pled is not a true indemnification claim, it is merely a request for a remedy for foreseeable damages arising from an alleged breach of contract.  Under both New York and Delaware law, a contract providing indemnification merely as a remedy for a breach of that contract does not provide a basis for a separate cause of action for indemnification.  It is not independent of the claim for the underlying alleged breach.  To the contrary, New York and Delaware law are clear that the cause of action remains breach of contract, and that such claims accrue at the time the contract was breached.

Here, the alleged underlying breaches are asserted breaches of representations and warranties that Standard Pacific made in 2006 and 2007 at the time that it sold each of the subject loans to LBB.   Accordingly, LBHI's claims of entitlement to indemnification as a contractual remedy for those alleged breaches of representations and warranties accrued at the time of the original breach, and are time-barred.   Neither the parties' contract nor governing law provides any justification for treating a demand for the contractual remedy of  indemnification fundamentally differently for statute of limitations purposes from a demand for the contractual remedy of repurchase.

### A.       The Loan Purchase Agreements and Seller's Guide

On September 8, 2004, Standard Pacific and LBB entered into two Loan Purchase Agreements (the "Agreements").   (Compl. ¶ 12, Exs. A-B.)   Under the Agreements, LBB purchased residential mortgage loans that Standard Pacific originated with the guidance of the Aurora Seller's Guide ("Seller's Guide"),[1] which was incorporated as part of the Agreements. (Compl. Ex. C.)  In the Seller's Guide, "Seller" referred to Standard Pacific, and "Purchaser" referred to LBB, its successors, and/or assigns.  (Compl. ¶ 42.)  Neither the Agreements nor the Seller's Guide mentioned LBHI, and LBHI (which filed for bankruptcy) is not a successor entity to LBB (which never filed for bankruptcy).

The Seller's Guide referred to the possibility that the Purchaser might under certain circumstances be entitled to seek repurchase from the Seller, or seek indemnification from it. (Compl. Ex. C, 21-23)  Crucially, in the Seller's Guide, repurchase and indemnification are: repeatedly referred to jointly; repeatedly described as "remedies"; and brought up only in connection with possible breaches by Seller, such as breaches of contractual representations, warranties, and covenants.  For example, Section 701 contemplates assignment by the Purchaser

---

[1] Aurora Loan Services was an agent of LBB.

of representations, warranties, and covenants made to it, and assignment of "any or all of the *remedies* available against Seller for Seller's **breach of any representation, warranty or covenant**, including, without limitation, the **repurchase and indemnification remedies**." (Compl. Ex. C, 3 (emphases added).) Section 713.3 repeats that same statement. (Compl. Ex. C, 23-25.)

The repurchase remedy provision, set forth in Section 710, specifically states that LBB's indemnification right arises in Section 711. For instance, when the purchaser has acquired title to property where the related loan is the subject of certain breaches of representations, warranties or covenants, the Seller shall either purchase the property at the Repurchase Price or "indemnify Purchaser as specified in *Section 711*." (Compl. Ex. C, 22.) Likewise, if the Purchaser has not acquired title to the property, the "Seller will nonetheless remain responsible to indemnify Purchaser, pursuant to *Section 711*." (*Id*.) Section 710 of the Seller's Guide goes on to state in relevant part:

> **All of Purchaser's remedies hereunder, including**, without limitation, the **repurchase** obligation with respect to the Mortgage Loan, the purchase obligation with respect to the Mortgaged Property, and **the indemnification with respect to any breach of a representation, warranty or covenant** (or any other Event of Default), shall exist . . . .

(Compl. Ex. C, 21-22 (emphases added).) And Section 711 of the Seller's Guide states in relevant part:

> In addition to any **repurchase** and cure obligations of Seller, and **any and all other remedies** available to Purchaser under this Seller's Guide and the Loan Purchase Agreement, Seller shall **indemnify** Purchaser and Purchaser's designee (including, without limitation, any subsequent holder of any Note) from and hold them harmless against all claims, losses, damages, penalties, fines, claims, forfeitures, lawsuits, court costs, reasonable attorney's fees, judgments and any other costs, fees and expenses that the Purchaser may sustain in any way related to or resulting from **any act or failure to act or any breach of any warranty, obligation, representation or covenant** contained in or made pursuant to this

4

Seller's Guide or the Loan Purchase Agreement by any agent, employee, representative or officer of Seller or Seller's correspondent.

(Compl. Ex. C, 22-23 (emphases added).)[2]

New York law governs because both the Agreements and the Seller's Guide include New York choice-of-law provisions:

This Agreement and the Seller's Guide shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with the laws of the State of New York, except to the extent preempted by Federal law.

(Agreements; Compl. Ex. A-B, 3.)

The Loan Purchase Agreement shall be construed in accordance with the substantive law of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such law without regard for the principles of conflict of laws.

(Seller's Guide; Compl. Ex. C, 23.)   The Seller's Guide provides that, "[i]n the case of any inconsistency between this Seller's Guide and the Loan Purchase Agreement, the terms of the Loan Purchase Agreement shall control."  (Compl. Ex. C, 24.)

### B.   Standard Pacific Sells 24 Loans to LBB, Which Then Sells Them to LBHI on a Non-Recourse Basis, With No Representations and Warranties

At issue in this case are 24 loans that Standard Pacific originated and sold to LBB.

(Compl. ¶¶ 17-41.)  Standard Pacific made certain representations and warranties regarding the

---

[2] Notably, the Assignment Agreement discussed herein also refers to repurchase and indemnification as "remedies."  Section 1(a) of the Assignment Agreement states in pertinent part:

To the extent assignable under the Agreements, the Assignor hereby assigns, transfers and conveys to the Assignee any rights it may have under the Agreements with respect to the Mortgage Loans, including any rights it may have in and to any or all representations, warranties or covenants made by the Sellers to the Assignor in the Seller's Guide and/or Agreements with respect to the Mortgage Loans, *along with any or all of the remedies Assignor may have against the Sellers with respect to the Mortgage Loans for Sellers' breach of any representation, warranty or covenant under the Seller's Guide and/or Agreements, including, without limitation, the repurchase and indemnification remedies...*

(Assignment Agreement attached as Ex. B; Compl. ¶ 42 (emphasis added).)

loans, pursuant to the Seller's Guide, which provides that such representations and warranties are made as of the date of each loan's sale to LBB.    (Compl. Ex. C, 3 ("Seller makes the representations, warranties, and covenants set forth in this Section as of the date of the Loan Purchase Agreement and remakes them as of each Purchase Date . . . .").)  LBHI concedes that Standard Pacific sold the loans to LBB in 2006 and 2007, with the earliest sale on September 15, 2006, and the latest sale on July 16, 2007. (Compl. ¶¶ 17-41.)

LBB, after purchasing these loans from Standard Pacific, sold the loans to LBHI. (Compl. ¶ 42.)  It is not alleged that LBB thereafter had any involvement with these loans, or that LBB suffered a loss related to them.  Nor could it have ever suffered a loss; these were "non-recourse" sales by LBB to LBHI, in which LBB made no representations and warranties to LBHI, and bore no liability for any defect associated with the loans.  (Ex. B.)  Moreover, despite LBB's rights under the Agreements and Seller's Guide being assignable (Compl. ¶ 42), LBB did not assign LBHI any such rights until January 31, 2011, almost five years after Standard Pacific sold the loans to LBB.  (Ex. B).  In turn, LBHI sold the 24 loans to Fannie Mae or Freddie Mac. (Compl. ¶¶ 2, 10.)   In connection with each sale, LBHI made numerous independent representations and warranties to Fannie Mae or Freddie Mac. (Compl. ¶ 2.)  If LBHI breached any of its representations and warranties, or otherwise breached its respective agreements with Fannie Mae or Freddie Mac, then those purchasers had the right to demand that LBHI either repurchase the loan or indemnify them for the loss. (*Id.*)   LBHI alleges that, in response to certain proofs of claims filed years earlier by those entities, it entered into settlements with Fannie Mae and Freddie Mac in January and February 2014, respectively.  (*Id.*)

## II.    **LEGAL STANDARD**

Rule 7012(b) of the Federal Rules of Bankruptcy Procedure, which incorporates Federal Rule of Civil Procedure 12(b)(6), permits a bankruptcy court to dismiss an adversary proceeding

if a plaintiff's complaint fails to state a claim upon which relief may be granted. *See* Fed. R. Bankr. P. 7012(b).  In reviewing the motion to dismiss, the Court accepts the factual allegations of the complaint as true and draws all reasonable inferences in the plaintiff's favor.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009); *E.E.O.C. v. Staten Island Sav. Bank*, 207 F.3d 144, 148 (2d Cir. 2000).

To survive a challenge to the adequacy of a complaint, the factual allegations in a complaint must be supported by more than mere conclusory statements.  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).  The allegations must be sufficient "to raise a right to relief above the speculative level" and provide more than a "formulaic recitation of the elements of a cause of action."  *Id.* (citations omitted).  A court may dismiss a complaint unless a plaintiff pleads "enough facts to state a claim to relief that is plausible on its face."  *Id.* at 570.

## III.   ARGUMENT

### A.   LBHI's Claim is not Cognizable as "Contractual Indemnification"

Its breach of contract claims having been rejected as untimely repeatedly in another forum, with such judgments against it then affirmed in a consolidated appellate action, based on the same Agreements and involving the same parties, LBHI now once again seeks -- this time in a new forum -- to  recharacterize its claims as ones for contractual indemnification.  *Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co., LLC*, 2016 WL 325126, at *12 (10th Cir. Jan. 27, 2016) (finding that Lehman Holdings "distorted the nature of a true indemnity claim.").  In a true indemnity claim, the plaintiff alleges that the defendant owed a duty to a third party rather than to the plaintiff itself:

> The gravamen of an indemnity claim is not that the defendant has breached some duty of care which it owes directly to the plaintiff, but rather that ***they both owe a duty to some third party*** and that because of defendant's

> negligence or wrongful conduct the plaintiff has been held legally liable and case
> in damages to the third party.  It is the equitably imposed obligation which the
> actual wrongdoer owes to indemnify the other who has, ***without fault on its part***,
> become legally liable and cast in damages to a third party by reason of that
> wrongdoing that is the only critical duty vis-à-vis plaintiff and defendant in an
> indemnity context.

*City of New York v. Lead Indus. Ass'n, Inc.*, 644 N.Y.S.2d 919, 923-24, 222 A.D.2d 119, 126-27

(N.Y. App. Div. 1996) (per curiam) (emphasis added).

An indemnity claim, like any other, requires proof of a harm.  *McCabe v. Queensboro Farm Prods., Inc.*, 239 N.E.2d 340, 342 (N.Y. 1968).  That harm arises from the plaintiff's payment to an injured third party *rather than injury to the plaintiff itself.  See Dutton v. Mitek Realty Corp.*, 463 N.Y.S.2d 471, 472, 463 A.D.2d 769, 770 (App. Div. 1983) (emphasis added). Here, assuming the allegation of LBHI's Complaint to be true that it "relied upon the representations and warranties contained in the Agreements in purchasing the Defective Loans," it would have suffered an injury itself, at the time of purchase, by receiving loans of lower quality and heightened risk.  (Compl. ¶ 48.)

The issue before the Court is not whether New York law recognizes that a properly pled claim for indemnification is distinct from a claim for breach of contract, or when such a claim accrues, but rather whether this particular claim asserted by LBHI is cognizable as one for contractual indemnification.  Here, LBHI's claim for contractual indemnification fails and must be dismissed.

Applying well-settled principles governing indemnity claims, the Second Circuit Court of Appeals addressed this issue in *Peoples' Democratic Republic of Yemen v. Goodpasture, Inc.*, 782 F.2d 346 (2d Cir. 1986).  There, notwithstanding the fact that Yemen characterized its claims as being for indemnity rather than for breach of contract, "Yemen's claims amount to no more than allegations that Goodpasture breached certain grain sales contracts."  *Id.* at 347.  An

action "does not become an action for indemnity merely because the pleader has so denominated it." *Id.* at 350 (citing *Bunker v. Bunker*, 437 N.Y.S.2d 326, 328, 80 A.D.2d 817, 817 (N.Y. App. Div. 1981)).

Yemen bought grain from the defendant, Goodpasture, who delivered the grain late. *Id.* at 347-48. As a result of the late deliveries, Yemen had to pay a third party (a shipowner) additional charges. *Id.* at 349. Yemen then sued Goodpasture to recover the additional expenses within two years of paying the shipowner, but about eight years after Goodpasture had made the late delivery. *Id.* at 348-49. Therefore, the claim would be timely if it involved indemnity and untimely if it involved breach of contract. *Id.* at 350. Concluding that the claim involved breach of contract, rather than indemnity, the Second Circuit Court of Appeals held that the claim was time-barred under the limitations period for contract actions and dismissed the complaint. *Id.* at 350-352.

The Second Circuit characterized the claim as one for breach of contract, even though Yemen had not incurred any loss until it paid the additional charges to the shipowner, because the charges were "foreseeable consequential damages from breach of the Yemen-Goodpasture contract." *Id.* at 351. In other words, Goodpasture's alleged contractual obligations were measured not by Yemen's contract with the shipowner, but by Yemen's contract with Goodpasture. *Id.* As a result, Yemen's claim involved breach of contract, rather than a "legitimate indemnity claim," and the payments to the third party were recoverable only as damages from Goodpasture's alleged breach of contract. *Id.* at 350-52.

The Tenth Circuit Court of Appeals, applying *Yemen*, regarded "Lehman Holdings' claims as causes of action for breach of contract even if Lehman Holdings had pleaded them as claims for indemnity." *Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co., LLC*, 2016

WL 325126, at *13 (10th Cir. Jan. 27, 2016).  Addressing the same inquiry before the Court

here, the Tenth Circuit reasoned:

> Like Yemen, Lehman Holdings had to pay third parties (Freddie Mac and
> Fannie Mae).  But again like Yemen, Lehman Holdings had to pay these third
> parties *only because* Universal American breached its contract with Lehman
> Holdings.  Just as Goodpasture's contract created a duty to Yemen rather than the
> shipowner, Universal American's contract created a duty to Lehman Holdings
> rather than Freddie Mac or Fannie Mae.  Thus, *Yemen* would require us to base
> accrual of the cause of action on the date of Universal American's breach of
> contract rather than the date of Lehman Holdings' payment to a third party.

*Id.* (emphasis added).  As a result, the Tenth Circuit Court of Appeals concluded that LBHI's

causes of action accrued when Universal American and Standard Pacific sold the allegedly

defective loans and made the challenged representations and warranties.

**B.      New York's Borrowing Statute Requires That Delaware's Three-Year
         Limitations Period Be Applied**

New York's statute of limitations includes a borrowing statute applicable when claims

accruing outside New York are asserted by a non-New York resident:

> An action based upon a cause of action accruing without the state cannot be
> commenced after the expiration of the time limited by the laws of either the state
> or the place without the state where the cause of action accrued, except that where
> the cause of action accrued in favor of a resident of the state the time limited by
> the laws of the state shall apply.

N.Y. C.P.L.R. 202. This borrowing statute applies the shorter of the limitations period as

between New York and the state in which LBHI's claim accrued.  Courts addressing this issue in

connection with this same Agreement have concluded that the borrowing statute calls for

application of Delaware's three-year limitations period.  *See, e.g., Lehman Bros. Holdings, Inc.

v. Universal Am. Mortg. Co., LLC*, 2016 WL 325126 (10th Cir. Jan. 27, 2016); *Lehman Bros.

Holdings, Inc. v. Universal Am. Mortg. Co., LLC*, No. 13-cv-00090-PAB-MJW, 2014 WL

3258409 (D. Colo. Jul. 8, 2014) (J. Brimmer).  Each court concluded, correctly, that LBB is a

Delaware resident, that LBHI stands in LBB's shoes, and any cause of action accrued in Delaware.

### 1.     LBB's Residence Controls Application of the Borrowing Statute

New York's highest court has explained that "[w]hen a nonresident sues on a cause of action accruing outside New York, CPLR 202 requires the cause of action to be timely under the limitation periods of both New York and the jurisdiction where the cause of action accrued." *Global Fin. Corp. v. Triarc Corp.*, 93 N.Y.2d 525, 528, 715 N.E.2d 482 (N.Y. 1999).  A cause of action accrues "at the time and in the place of the injury." *Id.* at 529.  In cases where the alleged injury is "purely economic," as it is here, "the place of injury usually is where the plaintiff resides and sustains the economic impact of the loss." *Id.*

LBHI sued as LBB's assignee (Compl. ¶ 12), and New York law is clear that for purposes of CPLR 202, simply assigning the claims does "not entitle[] [the assignee] to stand in a better position than that of the assignor." *Portfolio Recovery Assocs., LLC v. King*, 14 N.Y.3d 410, 416, 927 N.E.2d 1059, 1061 (N.Y. 2010); *see also Windsearch, Inc. v. Delafrange*, 90 A.D.3d 1223, 1224, 934 N.Y.S.2d 576, 577 (N.Y. App. Div. 2011) (same).  As held in *Portfolio Recovery Associates*:

> [Plaintiff], as the assignee of Discover, is not entitled to stand in a better position than that of its assignor. We must therefore first ascertain where the cause of action accrued in favor of Discover. Here, it is evident that the contract causes of action accrued in Delaware, the place where Discover sustained the economic injury in 1999 when [the defendant] allegedly breached the contract.  Discover is incorporated in Delaware and is not a New York resident. Therefore, the borrowing statute applies and the Delaware three-year statute of limitations governs.

14 N.Y.3d at 416. Similarly here, because it is LBB's claim being asserted, it is LBB's residency that must be considered in assessing the application of the borrowing statute. *See id.*

11

2.    **LBB was a Delaware Resident**

LBB is a non-resident for purposes of the borrowing statute because it was neither organized nor incorporated in New York. Instead, LBB was a federally-chartered savings association. Under federal law, each federally-chartered savings association must designate a home office, *e.g.*, 12 U.S.C. § 1464(d)(1)(A); 12 C.F.R. § 545.91(a), and LBB's home office at the time of the sales of these loans in 2006 and 2007 was in Wilmington, Delaware. (Ex. C (LBB's Federal Stock Charter providing that "[t]he home office shall be located in Wilmington, Delaware").)

The Code of Federal Regulations equates the concepts of "home office" and "principal place of business" for federal savings associations. *See* 12 C.F.R. §1263.18(b) ("The principal place of business of an institution [including a federal savings association] is the State in which the institution maintains its home office . . . ."); *see also* 12 C.F.R. § 561.39 ("The term principal office means the home office of a savings association established as such in conformity with the laws under which the savings association is organized.").  Therefore, as a matter of law, LBB's principal place of business was its home office in Delaware.

In addition, between 2005 and 2008, LBB was a member of the Federal Home Loan Bank of Pittsburgh ("FHLB Pittsburgh"). *See, e.g.*, *Federal Home Loan Bank Members Selected for Community Support Review*, 70 Fed. Reg. 60,083, at 60,084 (Oct. 14, 2005) (identifying LBB as being a member of FHLB Pittsburgh); *Federal Home Loan Bank Members Selected for Community Support Review*, 72 Fed. Reg. 58,088, at 58,089 (Oct. 12, 2007) (same) (Comp. Ex. D.)  That is a critical fact because a federally-chartered savings association is permitted to become a member of only the Federal Home Loan Bank responsible for the district that includes the state in which the savings association has its principal place of business. *See* 12 U.S.C. § 1424(b).

12

FHLB Pittsburgh's district includes Delaware, but not New York, so LBB could not possibly have had its principal place of business in New York and also have been a member of FHLB Pittsburgh.  (*See* Ex. E.); s*ee also Lehman Brothers Bank, FSB v. State Bank Comm.*, 937 A.2d 95, 102-04 (Del. 2007) (concluding that LBB was domiciled in Delaware for purposes of Delaware state tax laws because LBB's home office was in Delaware and because LBB was a member of FHLB Pittsburgh).  Based on the foregoing, LBB was a non-resident of New York at all relevant times and its claims are subject to the borrowing statute.  Therefore, because LBB was a Delaware resident incurring an economic injury in Delaware, the Delaware three-year limitations period for contract actions applies. *See* 10 Del. Code § 8106.

New York courts have been emphatic in holding that the borrowing statute applies even if the non-resident has a substantial New York presence, and even if the claim arguably accrued both in New York and elsewhere:

> Moreover, the New York Court of Appeals recently reiterated the general applicability of the residence standard and also stated that that standard is consistent with the purpose of the borrowing statute. In explaining why the state with the [allegedly] greatest contacts is not the place of accrual for purposes of the borrowing statute, the court stated: "[A]s we underscored in *ABB Power*, 'CPLR 202 is designed to add clarity to the law and to *provide the certainty of uniform application* to litigants.' *This goal is better served by a rule requiring the single determination of a plaintiff's residence than by a rule dependent on a litany of events relevant to the 'center of gravity' of a contract dispute."* [Citation omitted].  Finally, *even if it can be said that the cause of action accrued in both New York and Massachusetts, the borrowing statute still applies, and the Massachusetts statute would bar the action.*

*Gordon & Co. v. Ross*, 63 F. Supp. 2d 405, 408-09 (S.D.N.Y. 1999) (emphasis added), citing *Ins. Co. of North America v. ABB Power Generation, Inc.,* 91 N.Y.2d 180, 668 N.Y.S.2d 143, 690 N.E.2d 1249 (1997).  Accordingly, even if it could be said that LBB suffered its alleged injury both in New York and in Delaware, the borrowing statute would still apply, and LBHI's claims would still be time-barred.

### C.    Breach of Contract Claims are Time-Barred Under Delaware's Statute of Limitations

#### 1.    LBHI's Claims Accrued in 2006 and 2007 Upon Standard Pacific's Sale of the Loans

Delaware law imposes a three-year statute of limitations for breach of contract actions. 10 Del. Code § 8106; *see also L & R Saunders Assoc. d/b/a Radiology Prof'ls v. Bank of Am.,* 2012 WL 4479232, at *3 (Del. Super. Sept. 12, 2012) ("A breach of contract claim must be brought *within three years of the breach*." (emphasis added, citing 10 Del. Code § 8106)); *Albert v. Alex. Brown Mgmt. Servs., Inc.,* 2005 WL 1594085 (Del. Ch. June 29, 2005).

Under Delaware law, a claim accrues – and the statute of limitations begins running – at the time of the allegedly wrongful act, not at the time that the plaintiff discovers the wrongful act or suffers injury from the wrongful act.  "This Court has repeatedly held that a cause of action 'accrues' under Section 8106 at the time of the wrongful act, even if the plaintiff is ignorant of the cause of action." *Wal-Mart Stores, Inc. v. AIG Life Ins. Co.*, 860 A.2d 312, 319 (Del. 2004).[3]

This principle has been applied even to allegations of breached representations and warranties in a lawsuit based, like this one, on the sale of residential mortgage loans (and related servicing rights):

> Delaware's statute of limitations for contract claims begins to run on the date of the breach, regardless of whether the plaintiff is ignorant of the cause of action. That is established law and not subject to debate.  Because representations and warranties about facts preexisting, or contemporaneous with, a [sale] are to be true and accurate when made, a breach of such representations and warranties occurs on the date of the [sale's] closing and hence the cause of action accrues on that date.

---

[3] *See also In re Coca-Cola Enters., Inc.*, 2007 WL 3122370, at *5 n. 39 (Del. Ch. Oct. 17, 2007) aff'd sub nom. *Int'l Broth. Teamsters v. Coca-Cola Co.*, 954 A.2d 910 (Del. 2008) ("Under Delaware law, a plaintiff's cause of action accrues at the moment of the wrongful act – not when the harmful effects of the act are felt – even if the plaintiff is unaware of the wrong."); *Albert v. Alex. Brown Mgmt. Servs., Inc.*, 2005 WL 1594085, at *18 (Del. Ch. June 29, 2005) ("The court reiterates that a claim accrues at the time of the alleged wrongdoing, and not when the plaintiff suffered a loss.").

*Central Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings*, 2012 WL 3201139, at *17 (Del. Ch. Aug. 7, 2012) (internal quotations omitted), citing, *inter alia, SmithKline Beecham Pharms. Co. v. Merck & Co.*, 766 A.2d 442, 450 (Del. 2000); *CertainTeed Corp. v. Celotex Corp.*, 2005 WL 217032, at *8 (Del. Ch. Jan. 24, 2005) (noting that claim for breach of representations and warranties accrued on the date of the contract's closing).

 *Central Mortgage Co.* also emphatically rejects any suggestion that a claim did not accrue here until after Freddie Mac demanded a remedy from LBHI, or until LBHI made a remedial payment.  The Delaware Court of Chancery stated:

> [e]ssentially, [the plaintiff] wishes to have me hold that a breach of contract occurs not at closing, but when the plaintiff first perceives the injury (i.e., when the Agencies put back a loan [i.e., demand repurchase or indemnification]).  Its argument is thus with Delaware law and Delaware law is settled.

*Central Mortg. Co.*, 2012 WL 3201139, at *21.  Holding that the time of breach is the time at which an allegedly false representation and warranty was made, the court observed that "[s]tatutes of limitations are enacted to require plaintiffs to use diligence in bringing suits so that defendants are not prejudiced by undue delay, in recognition of the fact that memories fade and information goes stale.  Stale claims pose an obvious threat to doing real justice, as any trial judge knows." *Id.*

 New York law is in accord with Delaware law.  The general rule in New York is that "the cause of action [for breach of contract] accrues when the party making the claim possesses a legal right" to make the demand, not when the demand actually occurs.  *Hahn Auto. Warehouse, Inc. v. Am. Zurich Ins. Co.*, 18 N.Y.3d 765, 770 (2012).  This is true regardless of when the plaintiff discovered the alleged breach or when the plaintiff is injured by such breach.  *ABB Indus. Sys., Inc. v. Prime Technology, Inc.*, 120 F.3d 351, 360 (2d Cir. 1997) (citing, *inter alia, Ely-Cruikshank Co. v. Bank of Montreal*, 615 N.E.2d 985, 986-88 (N.Y. 1993) (emphasis

added)); *Rosenblatt v. Christie*, 195 Fed. App'x 11, 13 (2d Cir. 2006) ("'neither knowledge of the breach [of contract] nor cognizable damages are required to start the statute of limitations running at breach'") (citation omitted); *Structured Mortg. Trust 1997-2 v. Daiwa Fin. Corp.*, 2003 WL 548868, at *2 (S.D.N.Y. Feb. 25, 2003) ("The New York Court of Appeals applies an accrual-at-breach rule even when the breach and injury are not simultaneous.").

New York's highest court recently held that the statute of limitations for mortgage buyback-related claims begins to run on the date when the representations and warranties were made, rather than the later date on which the alleged failure to compensate the purchaser for its purported "loss" occurred. *ACE Sec. Corp. v. DB Structured Prods., Inc.*, 25 N.Y.3d 581, 594-96 (N.Y. 2015). The court thus affirmed a lower court ruling that was entirely consistent with the reasoning of Colorado federal courts applying New York law in cases brought by LBHI and its corporate affiliate Aurora. Specifically, the New York Court of Appeals noted that "the overwhelming majority of courts agree that cure or repurchase provisions in similar [Mortgage Loan Purchase Agreements] do not give rise to a separate and independent cause of action that accrues on the date when the sponsor refuses to cure or repurchase individual loans." *Id.* at 596, n.4 (citing, *inter alia*, *Lehman Bros. Holdings, Inc. v. Universal Am. Mortg. Co., LLC*, No. 13-cv-00092-WJM-BNB, 2014 WL 4269118, at *3-4 (D. Colo. Aug. 28, 2014); *Aurora Commercial Corp. v. Standard Pacific Mortg., Inc.*, No. 12-cv-03138-WJM-KLM, 2014 WL 1056383, at *4-5 (D. Colo. Mar. 19, 2014).)

*Ace Securities* comes on the heels of a similar holding in *Nomura Asset Acceptance Corp. v. Nomura Credit & Capital, Inc.*, 39 Misc. 3d 1226(A), 2013 WL 2072817 (Sup. Ct. N.Y. Cty. May 10, 2013). A remedial provision does not extend the time in which a claim may accrue, nor does a party's request for repurchase give rise to a new claim. *Id.* at *8 ("The statute of

16

limitations 'begins to run from the date of the first alleged breach,' not from the time plaintiff chooses to seek a remedy." (emphasis added)); *see also Structured Mortg. Trust 1997-2 v. Daiwa Fin. Corp.*, No. 02 Civ. 3232 (SHS), 2003 WL 548868 (S.D.N.Y. Feb. 25, 2003).

A New York federal court in a case relating to representations and warranties made in a mortgage loan purchase agreement reiterated this principle of "accrual at breach," stating:

> It is well settled that the statute of limitation for breach of contract begins to run from the day the contract was breached, not from the day the breach was discovered, or should have been discovered. ***This is true even when the alleged injury occurs after the breach itself***.

*Wells Fargo Bank, N.A. v. JPMorgan Chase Bank, N.A.*, 2014 WL 1259630, at * 2 (S.D.N.Y. 2014) (internal citation/quotation omitted) (emphasis added).  "This rule prevents a plaintiff from indefinitely extending the statute of limitations by waiting to make a demand."  *Id.* at *3.  The court goes on to state that "[t]he New York statutes essentially codify this rule, providing that 'where a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed from the time when the right to make the demand is complete.'"  *Id.* (citing N.Y. C.P.L.R. § 206(a)).

Also reaching the same conclusion was another federal court that had before it a case involving LBHI and this same form Agreement and related LBB/Aurora Seller's Guide.  *Lehman Bros. Holdings, Inc. v. Evergreen Moneysource Mortg. Co.*, 793 F. Supp. 2d 1189, 1193-94 (W.D. Wash. 2011) ("Evergreen's duty under sections 710 and 711 to either repurchase mortgage loans or indemnify for losses incurred as a result of a mortgage loan is only triggered by a breach of any of the representations, warranties, or covenants contained in Section 700 through 710 herein . . . . LBHI may not extend the accrual date of the statute of limitations simply by delaying its demand for payment.  To find otherwise would allow LBHI to essentially

circumvent the statute of limitations by indefinitely deferring its demand for payment." (emphasis added).)

Therefore, the alleged wrongful acts occurred at the time of Standard Pacific's sale of these loans to LBB. Those sales occurred in 2006 and 2007. The statute of limitations thus began to run as to each loan in 2006 and 2007, expiring in 2009 and 2010, respectively – approximately six years before LBHI filed its Complaint. Accordingly, LBHI's suit is untimely and barred by Delaware's statute of limitations, which is applied in accordance with New York's borrowing statute.[4]

## 2. The Indemnity Clause Provides a Contractual Remedy, not a Perpetual Cause of Action

LBHI's attempt to characterize its claim as a cause of action for indemnification fails. These are, and have always been, claims for breach of contract founded upon alleged breaches of representations and warranties. Because those claims accrued in 2006 and 2007 when Standard Pacific sold the subject loans to LBB, the claims are time-barred.

Merely labeling its claim "indemnification" does not confer on LBHI a virtually perpetual and limitless right to sue Standard Pacific for alleged breaches of representations and warranties that occurred in 2006 and 2007. With that label, LBHI seeks to convert a *contractual remedy* for alleged breaches of contract into a stand-alone cause of action. However, a "failure to pay" for an alleged underlying breach should not be deemed an additional claim beyond the claim for the underlying breach. Here, LBHI does not (nor can it) allege that the failure to pay

---

[4] Even assuming that Delaware's three year statute of limitations does not apply, this action is nonetheless barred by New York's six year statute of limitations.

gives rise to damages distinct from the alleged underlying breach that led to the demand for payment in the first place.[5]

LBHI's claim fails as a matter of both New York and Delaware law. Each state's case law precludes elevating a contractual remedy to the status of a stand-alone cause of action. In each state, indemnity as a contractual remedy for an alleged breach of that contract does not alter the limitations period. New York "does not recognize pre-suit remedial provisions as constituting separate promises which can serve as the basis for independent causes of action." *Lehman XS Trust, Series 2006-4N v. Greenpoint Mortg. Funding, Inc.*, 991 F. Supp. 2d 472, 477 (S.D.N.Y. 2014) (citations and internal quotation omitted). "[U]nder New York law, claims which are subject to pre-suit cure or demand requirements accrue when the underlying breach occurs, not when the demand is subsequently made or refused." *Id.*; *see also, e.g.*, *Structured Mortg. Trust 1997-2 v. Daiwa Fin. Corp.*, No. 02 42 Civ. 3232, 2003 WL 548868, at *2-3 (S.D.N.Y. 2003) ("Daiwa's false warranties and representations breached the contract at its inception in March 1994 . . . [S]ince the facts warranted in the March 1994 Pooling Agreement were not true when made, the statute of limitations began to run at that time, and expired six years later. . . . [P]laintiffs are asking this Court to [impose] in contract cases where there is a demand requirement . . . the otherwise rejected accrual-at-injury rule. Plaintiffs' argument must be rejected.").

Likewise, the Second Circuit Court of Appeals, in *Deutsche Bank National Trust Company v. Quicken Loans Inc.*, recently affirmed a finding that, in an action for breach of

---

[5] Following this logic, there would always necessarily be two separate claims for breach of contract: one for the actual breach, and another for a failure to pay damages for that breach. The "failure to pay" claim could, moreover, serve to essentially double the time period within which the alleged damages could be sought, since a plaintiff would merely need to make a demand for payment no later than the last day on which it could sue for the underlying breach, and then would have a renewed, full limitations period in which to file suit.

contractual obligations to repurchase mortgage loans, "the statute of limitations ran from the date

the representations and warranties were made" and that the implied covenant of good faith and

fair dealing was duplicative when both "arise from the same facts and seek the identical damages

for each alleged breach."  2015 WL 7146515, at *1 (2d Cir. Nov. 16, 2015) (citation omitted).

LBHI's cause of action is contrary to New York law because it would permit LBHI (or

any plaintiff) to perpetually circumvent the statute of limitations for breach of contract merely by

demanding indemnification at any point after the breach, and then suing for the "failure to

indemnify" instead of the underlying breach.  This Court should not create a wide loophole not

permitted by New York law.

Because New York's borrowing statute requires application of Delaware law, Delaware's

law must be reviewed, and it is consistent with New York jurisprudence:

> The plaintiff does not dispute but tacitly admits that a cause of action based on
> breach of warranty accrues at the time of sale of the article concerning which the
> warranty was given.  It contends, however, that its cause of action is not based
> upon a breach of warranty but is based upon a right of 'indemnity' under which
> Talcott is entitled to recover for an amount which it paid and which should have
> been paid by Aurora.  The plaintiff contends that the right of action in such case
> accrues at the date of payment and the Statute of Limitations begins to run at such
> time.  Indemnity, I think, is not a substantive cause of action existing of and by
> itself but is a right or legal principle which comes into existence as a concomitant
> right with reference to an independent cause of action to which it is attached.

*L.E. Talcott & Sons, Inc. v. Aurora Corp.*, 176 F. Supp. 783, 785-786 (D. Del. 1959),

*supplemented* 181 F. Supp. 581 (D. Del. 1960) *aff'd sub nom. L.E. Talcott & Sons, Inc. v. Aurora*

*Corp.*, 280 F.2d 128 (3d Cir. 1960).  Delaware law also directs that a claim for indemnity based

upon a breach of representation or warranty is time-barred to the same extent as a claim for the

breach of that representation or warranty.

In *LaPoint v. AmerisourceBergen Corporation*, the Supreme Court of Delaware analyzed

a merger agreement that included a provision for indemnity for damages "resulting from or

incident to any breach of any covenant, representation, warranty or agreement made by [defendant] in the Merger Agreement." 970 A.2d 185, 197 (Del. 2009). As the court explained, "that language can only be construed as requiring a finding of a breach before the indemnification obligation ripens." *Id.* The court went on to hold that such "[i]ndemnification claims do not accrue until the underlying claim is finally decided." *Id.* at 198. Of course, if an indemnification claim cannot accrue until the underlying breach claim is decided against the indemnitor, and the underlying breach claim necessarily must fail because it is time-barred, so too must the indemnification claim be time-barred. Here, the necessary predicate – a decision against Standard Pacific on a claim for breach of representation and warranty – never can occur because the claims accrued in 2006 and 2007and are time-barred.

The principles underlying *LaPointe* were applied in *Aircraft Serv. Int'l, Inc. v. TBI Overseas Holdings, Inc.*, No. CVN13C-06-265WCCCCLD, 2014 WL 4101660 (Del. Super. Aug. 5, 2014). There, the defendant sold a subsidiary to the plaintiff. The purchase and sale agreement included representations and warranties regarding litigation and environmental matters. *Id.* at *1. In addition, the agreement included an indemnity provision stating that the seller would indemnify the buyer for "any Loss incurred or required to be paid because of the breach of any representations or warranty . . . ." *Id.* at *2. Eventually, the buyer-plaintiff did suffer a loss, the seller-defendant declined to indemnify, and litigation ensued.

The seller-defendant moved to dismiss the case as time-barred because it was not filed within the abbreviated two-year limitations period provided for in the contract. The buyer-plaintiff, like LBHI here, argued that the breach alleged is the failure to indemnify, not the breach of the representations and warranties. The court rejected that argument, holding:

> Defendant's duty to indemnify does not arise unless there is an underlying breach
> of the representations and warranties. The only action through which Plaintiff can

> recover for breaches of the representations and warranties is through indemnity;
> therefore, the contractual limitations period set for such breaches must apply to
> the indemnity action.

*Id.* at *3. Therefore, Delaware accords with New York in holding that a claim for indemnity as a remedy for breach of representation or warranty is time-barred to the same extent that a claim for breach of that representation or warranty would be time-barred. Thus, LBHI's attempt to seek its indemnity remedy is time-barred because LBHI's cause of action for breach of representation and warranty accrued in 2006 and 2007.

Here, LBHI cannot argue that repurchase's sister contractual remedy, "indemnification" (essentially, compensatory damages), functionally has an independent accrual and limitations period. The Agreements (including the incorporated Seller's Guide) or the relevant case law do not support such a position. It is not enough for LBHI simply to note that the respective remedies are, to some extent at least, featured in separate (back-to-back) provisions of the Seller's Guide. There can be no question that the Seller's Guide in fact repeatedly refers to them in tandem as "remedies," and makes plain that their purpose is to redress contractual breaches, principally breaches of representations, warranties, and covenants. (Compl. Ex. C, 21-23.) If a demand for repurchase based on a breach of contract would be time-barred, so is a demand for indemnification.

Likewise, the pertinent case law in no way distinguishes among types of remedial provisions, and no such distinction would be sensible in this context. Governing law makes clear that "there is no practical difference between [a] 'repurchase' remedy and compensatory damages." *Deutsche Alt-A Sec. Mortg. Loan Trust, Series 2006-OA1 v. DB Structured Prods., Inc.*, 958 F. Supp. 2d 488, 501-502, 2013 WL 3863861, *11 (S.D.N.Y. 2013), quoting *Orix Real Estate v. Superior Bank, FSB*, 127 F. Supp. 2d 981, 983 (N.D. Ill. 2000) (applying New York

law).  The notion, therefore, that LBHI's demand for "repurchase" admittedly would not extend

the statute of limitations for LBHI's claim (or trigger the running of a new limitations period),

but that a request for "indemnification" somehow does, is directly contrary to well-settled New

York law.  It is a classic distinction without a difference.[6]

The indemnification clause in the Seller's Guide does not support LBHI's belatedly-

asserted vision of a stand-alone cause of action.  "[A]n indemnity clause must reflect the

unmistakable intent of the parties as to the scope of its coverage."  *Akhenaten v. Najee, L.L.C.*,

No. 1:07-CV-00970-RJH, 2009 WL 794485, at *3 (S.D.N.Y. Mar. 27, 2009).

Indeed, the notion that indemnity is  not a remedy under the parties' Agreements, or that

the indemnification obligation does not accrue until LBHI makes a payment to a third party, is

belied by a review of pleadings filed LBHI's affiliate, Aurora.  In each case, Aurora sought

indemnification as a remedy, but failed to allege that it made a payment to a third party, or

reference Fannie Mae or Freddie Mac in its pleadings.  *See, e.g., Aurora Bank, FSB v. DHI*

*Mortg. Co., Ltd,* Case No. 1:13-cv-00561-RPM (D. Colo. 2013) (ECF No. 8, ¶ 17) (providing

Defendant with written notice of Defendant's material breach of the representations, warranties,

and/or covenants with respect to the Loan, and demanding that defendant "indemnify Plaintiff

for Plaintiff's losses associated with the Loan.") (attached hereto as Ex. F); *Aurora Bank, FSB v.*

*PrimeLending, a PlainsCapital Co.*, Case No. 1:13-cv-00354-MSK (D. Colo. 2013) (ECF No. 1-

---

[6] LBHI's business model was to re-sell loans that it acquired from loan originators, such as Standard
Pacific.  It did not hold such loans in its own portfolio.  It would thus make a repurchase demand, in the
vast majority of instances, only after allegedly having repurchased a loan from a third party, such as
Fannie Mae or Freddie Mac.  Again, therefore, it makes no sense to acknowledge (correctly) that New
York and Delaware law would in this case bar as outside the statute of limitations a suit by LBHI seeking
the remedy of repurchase after LBHI repurchased a loan from Fannie or Freddie, but supposedly deem
timely a "post-indemnification" suit seeking the remedy of indemnification under the same agreement.  In
any case, the parties' Agreements in this instance permits no such distinction, treating indemnification
and repurchase as tandem remedies, not wildly different "causes of action" with their own distinct accrual
periods.

1, ¶ 14) (same) (attached hereto as Ex. G); *Aurora Bank, FSB v. Shea Mortg. Inc*., Case No. 1:12-cv-02752-RPM (D. Colo. 2012) (ECF No. 3, ¶ 18) ("Aurora has sent written demands to Shea for the repurchase of, or indemnification for losses relating to, each of the Subject Loans.") (attached hereto as Ex. H); *Aurora Bank, FSB v. Standard Pacific Mortg., Inc.*, No. 12-cv-03138-WJM-KLM (D. Colo. 2012) (ECF No. 6, ¶ 2) ("With respect to the loans at issue in this case, Standard breached its representations and warranties in the written contracts, and consequently, it is required to either indemnify Aurora for its losses, or repurchase the loans at issue from Aurora.") (attached hereto as Ex. I); *Aurora Bank, FSB v. Universal Am. Mortg. Co., LLC*, Case No. 1:12-cv-02067 (D. Colo. 2012) (ECF No. 1-1, ¶ 61) ("Defendant has breached the Agreement and Seller's Guide by: (a) breaching one or more of its agreements, representations, warranties, and/or covenants; (b) refusing or otherwise failing to repurchase the subject mortgage loans; and/or (c) refusing to indemnify Plaintiff for losses arising from or relating to the subject mortgage loans.") (attached hereto as Ex. J).

In this action, "LBHI seeks to enforce its right to contractual indemnification...as a result of Defendant's sale of 24 defective mortgage loans in breach of Defendant's representations, warranties and covenants concerning those loans." (Compl. ¶ 1.) In other words, an alleged breach of representations and warranties caused an alleged loss. LBHI believes it did not get the benefit of its bargain. But it must recognize that, if any such breach occurred, it suffered a loss (the difference in value between what it paid and what it received) on the date on which it acquired an allegedly deficient loan. And Section 711 permitted indemnification, as an alternative to repurchase, for any loss, or any expense. Accordingly, LBB (or LBHI on LBB's behalf) could have sought its indemnification remedy immediately at the time of the sales in 2006 and 2007, or at any time during the three-year limitations period. (*Id.*) But neither LBHI

nor LBB did so, and the claims are now time-barred even if these were cognizable "indemnification" claims.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, this Court should grant this Motion and dismiss with prejudice LBHI's Complaint for contractual indemnification as a non-cognizable cause of action and find that LBHI's claims arising from the Agreements are barred by the statute of limitations.

## V.    <u>ORAL ARGUMENT IS REQUESTED</u>

Oral argument is requested in this case because new arguments based on recent case law have been set forth in this Motion that the Court has not previously considered.

Dated: February 18, 2016.

Respectfully Submitted,

**BILZIN SUMBERG BAENA PRICE
& AXELROD LLP**
*Attorneys for Defendant*
1450 Brickell Avenue, Suite 2300
Miami, Florida 33131-3456
Telephone: (305) 374-7580
Facsimile: (305) 374-7593

By: __*/s/ Philip R. Stein*_____
    Philip R. Stein (FBN 41517)
    *(Admitted Pro Hac Vice)*
    pstein@bilzin.com
    Mindy A. Mora
    mmora@bilzin.com
    Anthony V. Narula (FBN 56546)
    *(Admitted Pro Hac Vice)*
    anarula@bilzin.com
    margote@bilzin.com
    eservice@bilzin.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 18th day of February, 2016, a true and correct copy of the foregoing was electronically filed with the Clerk of Court using the CMF/ECF. I also certify that the foregoing document is being served this day via transmission of Notice of Electronic Filing generated by CM/ECF on all parties of record.

___*/s/ Philip R. Stein*_____
    Philip R. Stein

MIAMI 4911939